UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ANDREA GREGG, ET AL.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**PROVIDENCE ST. JOSEPH HEALTH, ET AL., AND DOES 1-100,**<br><br>Defendants. | CASE NO. 4:20-cv-03880-YGR<br><br>**ORDER GRANTING MOTION TO REMAND; DENYING AS MOOT MOTION TO DISMISS**<br><br>Re: Dkt. No. 15 |

Plaintiffs Andrea Gregg and Charlene Davidson bring this putative class action against defendants Providence St. Joseph Health; Providence Health and Services; St. Joseph Health; St. Joseph Health System; St. Joseph Health Northern California, LLC; Queen of the Valley Medical Center; Santa Rosa Memorial Hospital; SRM Alliance Hospital Services d/b/a Petaluma Valley Hospital; St. Joseph Hospital of Eureka; and Redwood Memorial Hospital of Fortuna (collectively "defendants") for unlawful, unfair, and fraudulent business practices in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, and for intentional interference with contractual relations.  (Dkt. No. 1, Notice of Removal [NOR] at Exh. A ["Complaint"] ¶¶ 70, 86, 98, 103-111.)  Plaintiffs seek damages, restitution, injunctive, and other relief, individually and on behalf of a proposed class.  (Complaint ¶¶ 1-4.)  Plaintiffs originally filed their complaint in the California Superior Court, County of San Francisco, on March 26, 2020.  (NOR at 1.)  Defendants removed the action to this Court, asserting original jurisdiction based on existence of a federal

1  question and supplemental jurisdiction over California law claims. (*Id*. at 4.)

2      Now before the Court are plaintiffs' motion to remand (Dkt. No. 15) and defendants' motion to dismiss the complaint (Dkt. No. 11). Both motions are opposed.

    Having carefully considered the pleadings and the papers submitted, the matters properly subject to judicial notice,[1] and for the reasons set forth more fully below, the Court **ORDERS** that the motion to remand is **GRANTED**. Although plaintiff Davidson's claims reference her health insurance coverage under the federal Medicare program, defendants fail to establish that her claims "arise under" the federal Medicare statutes and regulations for purposes of federal jurisdiction. Given that jurisdiction has not been shown and this case must be remanded, the motion to dismiss is **DENIED AS MOOT**.

**I.   BACKGROUND**

    **A.   Allegations of the Complaint**

    Plaintiffs are individuals who sought or received medical services in relation to injuries sustained in separate car accidents. (Complaint ¶¶ 7-8.) Andrea Gregg ("Gregg") was injured in a car accident on November 2016 when she was read-ended. (*Id*. ¶ 7.) Charlene Davidson ("Davidson") was injured in a car accident caused by a third party on June 2018. (*Id*. ¶ 8.) Both received medical services from defendant Queen of the Valley Medical Center ("QVMC"). (*Id*. ¶¶ 74-75.) When admitted to QVMC, both provided information for their respective health insurance plans. (*Id*.) Gregg's plan was with United Healthcare and Davidson was covered by both Medicare and a Kaiser Permanente supplemental insurance plan. (*Id*. ¶¶ 7-8.)

    Plaintiffs allege that, rather than billing their health insurance plans, defendants asserted liens under the California Hospital Lien Act ("HLA"), California Civil Code sections 3045.1-3045.6, against their prospective civil recoveries from their tortfeasors. (*Id*. ¶¶ 7-8, 74-75.)

---

[1] Defendants request the Court to take judicial notice of the following documents: the complaint in *Phillips v. Kaiser Found. Health Plan, Inc*., N.D. Cal. Case No. 3:11-cv-02326-CRB, as attached to the notice of removal filed May 11, 2011; and excerpts of the Medicare Secondary Payer Manual, as well as a form Medicare provider agreement, from the federal Centers for Medicare & Medicaid Services ("CMS") website. (Request for Judicial Notice ["RJN"], Dkt. No. 19.) The Court **GRANTS** the unopposed request.

2

Under the HLA, when a hospital provides "emergency and ongoing medical or other services to any person injured by reason of an accident or negligent or other wrongful act" (other than accidents covered by Workers' Compensation), the hospital may assert a lien upon any claim for damages on account of those injuries "to the extent of the amount of the *reasonable and necessary charges* of the hospital" resulting from that accident. Cal. Civ. Code § 3045.1 (emphasis supplied).[2] Plaintiffs allege that, while the HLA limits a hospital's lien to 50 percent of the final judgment or settlement, Cal. Civ. Code § 3045.4, it does not prohibit hospitals from pursuing patients for the balance of the retail amount. (*Id*. ¶ 68.) By sidestepping the patient's health care insurance and seeking the higher "retail" bill through an HLA lien, the hospital deprives the patient of the benefit of their health plan coverage. (*Id*. ¶ 69.)

Here, plaintiffs allege that QVMC refrained from billing their health insurance plans in order to assert HLA liens against potential tort recovery on their automobile accidents at "grossly inflated" retail rates. (*Id*. ¶¶ 76-77.) Both Gregg and Davidson learned QVMC did not submit bills to their health care plans when they received letters from QVMC administrators notifying them of the liens. (*Id*. ¶¶ 74-75.) Plaintiffs allege that their health insurance plans contain terms establishing that contractual rates constitute payment in full. (*Id*. ¶¶ 64, 71.) Plaintiffs allege that by not billing their health insurance plans, defendants denied them the benefit of the bargain of their health insurance contracts and abused the HLA in a way that was not intended by the Legislature. (*Id*. ¶¶ 76, 77.) Plaintiffs allege that the lien amounts exceeded the "reasonable and necessary" limitation in the HLA because the amounts were "in orders" higher than the amount QVMC would have accepted as payment in full had QVMC submitted bills to the plaintiffs' health insurance plans. (*Id*. ¶¶ 74-75.) Based on the foregoing, plaintiffs allege that defendants

---

[2] Plaintiffs allege that, as held by the California Supreme Court in *Parnell v. Adventist Health Systems/West*, 35 Cal.4th 595 (2005), the HLA has been interpreted to prohibit hospitals from billing patients' health plans at their contracted rate and then seeking the balance of a "list" or "retail" rate for services by means of an HLA lien, in a practice known as "balance billing," because payment by the health plan had extinguished the debt completely. (*Id*. at ¶¶ 65-67.) Plaintiffs allege that *Parnell* did not address, and thus created incentives for, the practice of hospitals electing not to bill a patient's health plan at all and instead recouping all costs by asserting an HLA lien. (*Id*. ¶¶ 69, 77.)

3

intentionally interfered with their contracts and engaged in unfair and unlawful practices under the UCL.

### B. Procedural Background

Defendants removed the complaint from state court on the grounds that plaintiff Davidson's claims are predicated on federal law and implicate federal questions under the Medicare Act.[3] (NOR at 3.)[4] Defendants contend that the allegations in the complaint rely on federal Medicare requirements since Davidson seeks to have Medicare pay for defendants' services rather than the third-party responsible for the injuries that necessitated her treatment. (*Id*.) Thus, defendants assert that Davidson essentially has made a claim for benefits under the Medicare Act that will require the Court to interpret, apply, and enforce federal Medicare laws and regulations, including those under the Medicare Secondary Payer ("MSP") rules found in 42 U.S.C. section 1395(y) and implementing regulations at 42 C.F.R. sections 422.1, *et seq*. (*Id*. at 3.)[5]

---

[3] Defendants assert that the Court may take supplemental jurisdiction, under 28 U.S.C. section 1367, over co-plaintiff Gregg's claims since they are related to Davidson's claims and part of the same controversy.

[4] Although not stated in their notice of removal, defendants suggest in their opposition brief that federal jurisdiction is also proper under the Class Action Fairness Act ("CAFA"). (*See* Dkt. No. 16 ["Oppo."] at 10-13.) The NOR was expressly "based on federal question jurisdiction," not CAFA. Defendants made only a passing reference to CAFA in a footnote to the NOR, alleging no factual basis to support CAFA jurisdiction. (*See* NOR at 2 n.1) The Court rejects this backdoor attempt to establish removal jurisdiction. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) (notice of removal must track general pleading requirements of Fed. R. Civ. P 8(a)); *Roa v. TS Staffing Servs., Inc.*, No. 2:14-CV-08424-ODW, 2015 WL 300413, at *2 (C.D. Cal. Jan. 22, 2015) (NOR based on CAFA must contain a short and plain statement of all grounds in 28 U.S.C. § 1332(d)).

[5] The MSP provisions, 42 U.S.C. section 1395y(b), "mak[e] Medicare insurance secondary to any 'primary plan' obligated to pay a Medicare recipient's medical expenses, including a third-party tortfeasor's automobile insurance." *Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1152 (9th Cir. 2013) (citing 42 U.S.C. § 1395y(b)(2)(A)). Medicare-participating hospitals are required to maintain a system as part of their admissions process to identify any primary payers other than Medicare in order "[t]o bill other primary payers before Medicare" so that incorrect billing and overpayments can be prevented. 42 C.F.R. § 489.20(f)-(g). "The fact that Medicare payments are limited to the [diagnosis-related group or] DRG amount, or the reasonable charge, reasonable cost, capitation or fee schedule rate, does not affect the amount that a primary payer may pay." 42 C.F.R. § 411.31(a). "With respect to workers' compensation plans, no-fault insurers, and employer group health plans, a provider or supplier may bill its full charges and expect those charges to be paid *unless there are limits imposed by laws other than title XVIII of the Act* or by agreements with the primary payer." 42 C.F.R. § 411.31(b) (emphasis supplied).

**II.     APPLICABLE STANDARDS**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). The removing party "has the burden to prove, by a preponderance of the evidence, that removal is proper." *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106-7 (9th Cir. 2010). Removal jurisdiction based upon a federal question is determined from the complaint as it existed at the time of removal. *Libhart v. Santa Monica Dairy, Co.*, 592 F.2d 1062, 1065 (citation omitted). The plaintiff is the master of their complaint and "may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987). Only state-court actions that could have been filed in federal court in the first instance may be removed. *Id*. Thus, there generally exists a "strong presumption against removal jurisdiction" when evaluating a motion to remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *cf. Dart*, 572 U.S. 81, 89 (presumption does not apply in cases of CAFA removal). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id*. (citation omitted).

Defendants here removed the complaint from state court on the grounds that plaintiff Davidson's claims are "founded on a claim or right arising under the Constitution, treaties or laws of the United States." 28 U.S.C. § 1441(a); *see also* 28 U.S.C. § 1331.[6] Specifically, the NOR alleges that Davidson's claims arise under federal Medicare laws. Where a complaint does not allege a violation of a federal law, treaty, or Constitutional right, the Supreme Court has recognized a "slim category" of cases which may nevertheless be considered to "arise under" federal law. *Empire Healthchoice Assurance v. McVeigh*, 547 U.S. 677, 701 (2006). "A case aris[es] under federal law . . . if a well-pleaded complaint establishes either that federal law

---

[6] Defendants assert supplemental jurisdiction over plaintiff Gregg's state law claims. *See* 28 U.S.C. § 1367(a) ("in any civil action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

5

creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Id.* at 689-90.  Invocation of a "federal issue" is not a "password opening federal courts to any state action embracing a point of federal law." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005).  "[T]he question is, does a state-law claim necessarily raise a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id*.

Unless Congress has "so completely pre-empted a particular area that any civil complaint raising this select group of claims is necessarily federal in character," no federal jurisdiction will be found.  *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).  "[A] case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar* 482 U.S. at 393 (1987) (emphasis in original).

### III. DISCUSSION

#### A. Framework

Plaintiffs move to remand on the grounds that the claims here do not arise under the Medicare Act but instead are based entirely on a violation of California statutory law, the Hospital Lien Act.  Davidson alleges that defendants refused to bill her health care service plans (Medicare and Kaiser) and accept the plan's contracted rates, but instead asserted a lien at a grossly inflated "customary" rate against any damages award or settlement Davidson may receive.  She contends the crux of the issue is whether defendants violated *state* law by asserting liens to charge rates that are not "reasonable and necessary" under the HLA.  Defendants counter that Davidson's claims actually arise under the Medicare Act and are a disguised claim for denial of Medicare benefits since each claim effectively alleges she was entitled to limit QVMC's lien to the amount it would have been reimbursed under Medicare.

"The Supreme Court has identified two circumstances in which a claim 'arises under' the Medicare Act: (1) where the 'standing and the substantive basis for representation of the claims'

6

is the Medicare Act; and (2) where the claims are 'inextricably intertwined' with a claim for Medicare benefits." *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1141 (9th Cir. 2010) (citing *Heckler v. Ringer*, 466 U.S. 602, 614-615 (1984)); *see also Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1112 (9th Cir. 2003) (same). "One category of claims that [the Ninth Circuit] and other courts have found to 'arise under' the Act are those cases that are '[c]leverly concealed claims for benefits.'" *Id.* "[W]here, at bottom, a plaintiff is complaining about the denial of Medicare benefits . . . the claim 'arises under' the Medicare Act." *Id.* at 1142-43.

### B. Analysis

Defendants argue that Davidson's claims arise under the Medicare Act and are essentially a complaint about denial of Medicare benefits since she seeks to limit the amount QVMC could recover for her medical bills to the amount it would have received if it had submitted to the bills to Medicare pursuant to the terms of its Medicare Provider Agreement. Defendants rely primarily on three cases: the Ninth Circuit's decision in *Uhm*, 620 F.3d 1134, and the district court decisions in *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F.Supp.2d 1078 (N.D. Cal. 2011) and *Morales v. Providence Health and Servs., Inc.*, No. LA CV15-04156 JAK (PLAx), 2015 WL 13768982 (C.D. Cal. Dec. 14, 2015) *aff'd sub nom.*, *Morales v. Providence Health Sys.-S. Cal.*, 702 F.Appx.550, No. 16-55072, 2017 WL 3207058, *4 (9th Cir. July 28, 2017). The Court has considered each of the cases. While on their face the factual scenarios appear similar, the allegations of the well-pleaded complaint here focus *not* on the violation of the Medicare statute or regulations, but on the pure application of California law. As set forth below, the Court reviews and then considers the decisions in the context of this case.

First, in *Uhm*, plaintiffs sued Humana alleging that they had contracted with Humana as a Medicare Part D prescription drug insurance provider but Humana had failed to provide the prescription benefits as promised, breaching the contract. *Uhm*, 620 F.3d at 1128. Humana argued that plaintiffs' claims were really complaints about denial of Medicare benefits and, as such, were subject to the exhaustion requirements for denial of benefits under the Medicare statute. *Id.* at 1142-43. The Ninth Circuit agreed with Humana, finding that plaintiffs had not alleged "that Humana promised anything more than to abide by the requirements of the

7

[Medicare] Act" nor had they "alleged [the] contract imposed upon Humana any duties *above and beyond compliance with the Act itself*." *Uhm*, 620 F.3d at 1142-44 (emphasis supplied).[7]

Next, in *Phillips*, an enrollee in a Kaiser-run Medicare Advantage insurance plan, was injured in a car accident. *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F.Supp.2d 1078, 1082 (N.D. Cal. 2011). Kaiser both provided her medical treatment and, as insurer, paid for it. *Id*. After her treatment, plaintiff made a claim for compensation arising from the car accident and the claim settled for $100,000. *Id*. at 1083. Kaiser then asserted that it was entitled to recover $88,205.46 from that settlement under a lien pursuant to the Healthcare Lien Act, California Civil Code section 3040,[8] and the federal Medicare Advantage statute's secondary payer provisions. *Id*. Phillips sued Kaiser on behalf of a putative class for violation of the California UCL and Consumer Legal Remedies Act, alleging that Kaiser "ha[d] no right to recover against her *under federal law* . . . [and no] authority . . . to recover at rates in excess of Medicare [fee for service] rates, notwithstanding . . . section 3040." *Id*. at 1083 (emphasis supplied).[9] The court in *Phillips* dismissed plaintiff's claims on grounds of express preemption and failure to exhaust under the Medicare Act. *Id*. at 1087-88. The court ruled that, "[t]o the extent [Phillips] is claiming that Kaiser is running afoul *of the Medicare Act* by collecting reimbursement from her in an amount greater than what is permitted under *that Act* she is making a claim for [Medicare] benefits and must exhaust that claim." *Id.* at 1089 (emphasis supplied).[10] Thus, again, the alleged violation of

---

[7] The court in *Uhm* further held that plaintiffs' claims for common law fraud and violation of consumer fraud statutes, based upon misrepresentations in Humana's prescription drug marketing materials, were *expressly preempted* by a provision in the Medicare Prescription Drug Program stating that state standards with respect to "marketing materials and summaries and schedules of benefits regarding a Medicare+Choice plan" were superseded. *Id*. at 1148-49 (citing 42 U.S.C. § 1395w–26(b)(3)). No such express preemption grounds are argued here.

[8] The Health Care Lien act in section 3040 is a separate and distinct provision from the Hospital Lien Act in sections 3045.1 *et seq*.

[9] The court denied a motion to remand on grounds that jurisdiction was established under CAFA. *Id*. at 1087.

[10] The court in *Phillips* first asserted jurisdiction under CAFA. With respect to is conclusion regarding an alternative view of the complaint, this Court declines to follow its analysis. *Phillips, supra,* 953 F. Supp. 2d at 1090 (equating a claim for unfair and unlawful creditor actions to a claim for benefits).

8

the Medicare Act was ultimately dispositive.

Finally, in *Morales*, plaintiff alleged that defendant medical providers erroneously billed plaintiff by filing a lien against settlement proceeds in her tort action rather than billing Medicare. *Morales,* 2015 WL 13768982, *1 (C.D. Cal. Dec. 14, 2015). Plaintiff alleged state law claims which defendants removed to federal court on the grounds that the claims arose under federal law. *Id*. at 2. The court found federal question jurisdiction was established because each of plaintiff's state law claims was "premised on the contention that [d]efendants *violated the Medicare Act* by billing [p]laintiff, rather than Medicare, for the services at issue" since plaintiff alleged defendants were "*barred by 42 U.S.C. § 1395cc* from charging [p]laintiff for any services for which she was entitled to have Medicare pay." *Id*. at *3 (emphasis supplied). Thus, the court concluded, "[i]n substance, [plaintiff's] claims seek the recovery of improperly denied Medicare benefits. . . . [since] the [complaint] alleges no more than that Defendants were required to comply with the Medicare Act, but failed to do so." *Id*. at *3-4.

The instant complaint, while alleging similar fact patterns, actually asserts the exact opposite of the claims in *Phillips* and *Morales*. Davidson argues that, even if the Medicare Secondary Payer requirements authorize and direct medical providers *to seek* payment from other payers via liens, the *amount* of the liens sought by defendants here is unlawful under governing California law because it violates the HLA's "reasonable and necessary" limitation in an effort to sidestep the balance billing practices found unlawful by the California Supreme Court in *Parnell,* 35 Cal.4th at 607.[11] (*See* Complaint ¶¶ 70-77.) Thus, California law is the controlling framework of the claims here and the complaint is not one for benefits arising under the Medicare Act.

Defendants' argument that the claims are so intertwined with the Medicare Act that they would require interpretation of the statute and regulations to determine the lawfulness of the liens does not persuade. The parties are in agreement that the Medicare regulations and the Medicare

---

[11] Defendants' citation to *New York City Health & Hospitals Corp. v. WellCare of New York*, 769 F. Supp. 2d 250 (S.D.N.Y. 2011) is distinguishable on similar grounds. *See id.* at 256 ("in order to prevail on its breach of contract claim, HHC will have to prove that WellCare's failure to pay [certain amounts] *violated Medicare law and regulations*." (emphasis supplied)).

9

Secondary Payer Manual ("MSP Manual") authorize and instruct hospital medical providers to seek recovery from a primary payer, including by means of a lien on a judgment or settlement. *See* 42. C.F.R. § 489.20(g) (providers commit "[t]o bill other primary payers before Medicare"); MSP Manual at § 40.2(B) (RJN, Exh. B) ("Generally, providers, physicians, and other suppliers must bill liability insurance prior to the expiration of the promptly period rather than bill Medicare. (The filing of an acceptable lien against a beneficiary's liability insurance settlement is considered billing the liability insurance.)".) The MSP Manual further clarifies that:

> The MSP provisions ***do not create lien rights when those rights do not exist under State law***. ***Where permitted by State law***, a provider, physician, or other supplier may file a lien for full charges against a beneficiary's liability settlement.

(*Id*. at 40.2(F), emphasis supplied.). Thus, the MSP Manual expressly acknowledges that state law governs lien rights and specifically the right to file a lien for "full charges." No conflict with or interpretation of federal Medicare rules appears. Unlike *Phillips* and *Morales*, Davidson does not challenge the right of defendants to *assert* a lien, as authorized by the Medicare statute, but instead alleges that the *amount* of the lien was not "permitted by State law" because it violated the HLA's "reasonable and necessary" limitation.[12]

Defendants' citation to other decisions permitting Medicare providers to first seek payment by pursuing liens against patients' tort recoveries for full charges does not aid their "arising under" argument. To the contrary, those decisions underscore the fact that *state* lien laws control the propriety of the filing and amount of the lien to be recovered from a patient's tort liability recovery. *See Oregon Ass'n of Hosps. v. Bowen*, 708 F. Supp. 1135, 1136 (D. Or. 1989) (finding that federal Medicare administration agency had no authority to order the Medicare provider to refund the difference between Medicare rate and "full charges" when provider filed a lien pursuant to Oregon state lien law); *Joiner v. Med. Ctr. E., Inc.*, 709 So. 2d 1209, 1221 (Ala. 1998) (Alabama Supreme Court decision that reasonableness of the amount of a lien was a matter

---

[12] While MSP regulations provide that the rules established for the Medicare Advantage program preempt state laws, including billing primary payers, nothing in the regulation or any other authority cited by defendants suggest that state laws regulating hospital and health care provider liens are preempted. *See* 42 C.F.R. § 422.108(f).

10

of state law, not Medicare regulations or guidance).

Moreover, even in the context of a provider's alleged denial of Medicare benefits by virtue of denying patients services covered by Medicare, the Ninth Circuit has cautioned that the "arising under" language (and concomitant requirement to administratively exhaust claims for Medicare benefits) cannot be read so broadly as to preclude a claim against a Medicare provider for its tortious or wrongful conduct. *Ardary v. Aetna Health Plans of California, Inc.*, 98 F.3d 496, 501 (9th Cir. 1996), *as amended on denial of reh'g and reh'g en banc* (Dec. 26, 1996). "We find nothing in the legislative history to suggest that the Act was designed to abolish all state remedies which might exist against a private Medicare provider for torts committed during its administration of Medicare benefits pursuant to a contract with HCFA." *Id.*; *see also Hofler v. Aetna US Healthcare of California, Inc.*, 296 F.3d 764, 769 (9th Cir. 2002), *abrogated on other grounds by Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005) (state law wrongful death claims alleging denial of treatment against HMO did not "arise under" Medicare); *Vaccarino v. Aetna, Inc.*, No. EDCV1802349JGBSHKX, 2018 WL 6249707, at *4 (C.D. Cal. Nov. 29, 2018) (claims concerning harm to a patient caused by denial of Medicare coverage for chemotherapy did not "arise under" Medicare Act).

Here, Davidson does not allege that she was denied Medicare benefits, nor does she seek to recover them. Instead, she seeks to limit the state law liens filed by QVMC to their "reasonable and necessary" amount under state law, the measure of which would be the rates QVMC normally would have been able to recover from Davidson's health insurance coverage. The mere reference to Medicare rates does not convert the claim here into one arising under the Medicare Act.

In sum, defendants have failed to meet their burden to establish that the action here falls within the "slim category" of state law claims "arising under" federal law for purposes of federal question jurisdiction. Having failed to establish that jurisdiction is proper, the case must be remanded.

//

//

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** plaintiffs' motion to remand. The motion to dismiss is **MOOT.**

The Clerk of the Court is **DIRECTED** to remand this action to the Superior Court of California, County of San Francisco.[13]

This Order terminates Docket Number 15.

**IT IS SO ORDERED.**

Dated: February 12, 2021

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE

---

[13] Defendants contend that any remand should be to the County of Napa. Plaintiffs stated in their complaint that the Superior Court of California, County of Napa, was the appropriate venue but, at the time of filing, the Napa County courthouse was not accepting new filings due to the coronavirus pandemic. (Complaint ¶ 6.) Nevertheless, the Court finds it proper to remand this action to San Francisco County, the county from which it was removed, leaving to the state court the question of whether a venue change, by motion or stipulation, is appropriate.